**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA**

| | |
|---|---|
| In re<br><br>JOHN KARL YOUSE,<br><br>Debtor. | Case No. 23-00172-GS<br>Chapter 13 |

### MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION

Creditors Daniel and Robert Clift filed their Motion for Relief from the Automatic Stay on November 6, 2023 (ECF No. 22) (Motion). The Motion alleged that the Clifts were beneficiaries of a Deed of Trust encumbering 11415 Echo Street in Eagle River, Alaska (the Property) that secured "a $900,000 promissory note." ECF No. 22 at 2. The debtor, John Youse, filed his *pro se* bankruptcy shortly before the Clifts conducted their foreclosure sale that same day. Unknowingly, the Clifts purchased the Property by an offset bid in violation of the automatic stay. ECF No. 22-3. The Clifts then sought relief from stay to foreclose on their deed of trust. Youse originally failed to respond timely but the court required supplemental briefing consistent with the Local Bankruptcy Rules because the Motion failed to attach the requisite evidentiary support. ECF No. 33. Ultimately the debtor opposed the Motion shortly before the court heard argument on December 20, 2023. ECF No. 51. At the conclusion of argument at the hearing, the court orally granted relief from stay under 11 U.S.C. §§ 362(d)(1) and (2).

At the hearing, counsel for the Clifts requested that the order grant relief from stay *nunc pro tunc* to the foreclosure sale held on October 13, 2023. The court declined, as the Motion did not raise or discuss annulment of the automatic stay. Rather, the Motion merely referenced "*nunc pro tunc*" relief in its conclusion. The court advised counsel that if the Clifts wanted the court to

examine annulment of the stay under § 362(d), they should bring a motion to reconsider under the applicable rules of procedure. The court cautioned, however, that any such motion would be required to explain why the matter was not raised previously and the basis for considering new relief.

Before the court entered its written order on the Motion (ECF No. 59), the Clifts filed their motion seeking reconsideration of the court's denial of their *nunc pro tunc* request (Reconsideration Motion). ECF No. 58. The Reconsideration Motion seeks relief under Fed. R. Civ. P. 60(b). The Clifts argue that denial of retroactive relief will unduly prejudice them and require that they restart the foreclosure process. They contend that this may result in damage to the Property. The Clifts' counsel also argued that her failure to provide authority in support of the request for *nunc pro tunc* relief was excusable neglect in light of her infrequent practice before the bankruptcy court. Citing *Fjeldsted v. Lien (In re Fjeldsted),* 293 B.R. 12 (B.A.P. 9th Cir. 2003), the Clifts state that the applicable factors favor granting retroactive relief from the automatic stay.

On December 29, 2023, the court set deadlines for an opposition and reply to the Reconsideration Motion. ECF No. 64. The debtor filed his objection to the Reconsideration Motion on January 10, 2024 (Objection). ECF No. 70. The debtor asserted that he would be unduly prejudiced by *nunc pro tunc* relief, claiming that he would be left without recourse or time to retrieve his belongings from the Property. He argued that although the Property is only occupied part-time, it is "fully looked after" and does not require protection from damage. ECF No. 70 at 1. He concluded that he was not adequately represented in his prior state court litigation with the Clifts, and contended that the Clifts' foreclosure of the Property was improper under the agreement between the Clifts, the debtor and his former business partner.

The Clifts filed their reply on January 17, 2024. ECF No. 72. They responded that the debtor's challenges to retroactive relief are inappropriate bases upon which to deny the Reconsideration Motion. They point to the dearh of evidence presented by the debtor in support of his opposition, including any proof that the Property is not vulnerable to damage during the winter months.

**Analysis**

The Clifts bring their motion under Fed. R. Civ. P. 60(b)(1), made applicable by Fed. R. Bankr. P. 9024, which permits courts to grant relief from orders in certain instances delineated in six subsections. The total of their legal analysis for relief under Rule 60(b) is summarized in the following sentence:

> Civil Rule 60 identifies the grounds for reconsideration, which include (among other grounds) clerical mistakes; mistakes resulting from oversights or omissions; mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; and a catch-all, any other reason that justifies relief.

ECF No. 58 at 2.

The Reconsideration Motion only specifically identifies excusable neglect as the basis for relief under Rule 60(b). The Supreme Court has explained: "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 60(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). Thus, the Ninth Circuit Bankruptcy Appellate Panel (BAP) has recognized "that the concept of excusable neglect was 'not limited strictly to omissions caused by circumstances beyond the control of the movant' and could include situations in which the failure to comply with a filing deadline is attributable to negligence." *Herrero v. Guzman (In re Guzman)*, 2010 WL 6259994, at **6–7

Page 3 of 12

(B.A.P. 9th Cir. Sept. 20, 2010) (quoting *Pioneer,* 507 U.S. at 392). Under *Pioneer,* courts are to evaluate "excusable neglect" by examining the totality of "the circumstances surrounding the neglect, including (1) the danger of prejudice to the parties, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, and (4) whether the party seeking to be excused from neglect acted in good faith." *Id*. at * 6 (citing *Pioneer,* 507 U.S. at 395).

Though the Clifts do not directly address the *Pioneer* factors, the Reconsideration Motion does cover most of them in one fashion or another. They argue significant prejudice will result absent annulment because Alaska law will require them to re-initiate the roughly four-month foreclosure process. They remind the court that the debtor has taken bad acts, including the prepetition transfer of their collateral to another nondebtor entity and his attempt to modify the deed of trust, ultimately leading to the filing of this bankruptcy minutes before the scheduled foreclosure. They are further concerned that something may happen to their collateral, especially given the heavy snowfall experienced in Anchorage this winter. Finally, counsel for the Clifts contends that her inexperience in bankruptcy constitutes excusable neglect under Rule 60(b)(1). She concedes that she did not research "*nunc pro tunc*" relief but maintains that this was because the statute clearly supports annulment of the stay. Moreover, she notes that the debtor had opposed the Motion. The Reconsideration Motion is supported by the declaration of Eva Gardner, which generically supports the allegations.

As the Supreme Court recognized, the ultimate question before the court is whether the party's neglect is "excusable." *Pioneer*, 507 U.S. at 395. In *Guzman,* the BAP observed:

> The Ninth Circuit has similarly found that attorney inexperience, poor litigation decisions, mistakes of law, or alleged malpractice are not encompassed under *Pioneer's* excusable neglect analysis. *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1998) (no excusable neglect where attorney failed to plead an affirmative defense); *Casey v. Albertson's Inc.*, 362 F.3d 1254,

> 1260 (9th Cir. 2004) (no excusable neglect where attorney was inexperienced and failed to respond to requests for admission or attend a summary judgment hearing); *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d [1097,] 1101 (determining that mistakes or misconduct of a plaintiff or his counsel are "more appropriately addressed through malpractice claims" than under FRCP 60(b)(1)); *see also Warrick v. Birdsell (In re Warrick),* 278 B.R. 182, 186–87 (9th Cir. BAP 2002) (no excusable neglect where attorney failed to understand and apply nonambiguous rules regarding time to file an appeal).

*Id.* at *8.

Whether the court should annul the stay to validate the Clifts' foreclosure presents a serious question that requires a balancing of the equities. *Fjeldsted*, 293 B.R. at 24. The Clifts are generally dismissive as to the debtor's bankruptcy filing and discount the applicability of the stay. Yet, the automatic stay is at the heart of every bankruptcy. As reflected in the legislative history of § 362 quoted in *Abrams v. Southwest Leasing and Rental Inc. (In re Abrams)*, 127 B.R. 239, 241 n.5 (B.A.P. 9th Cir. 1991) (quoting H.R. REP. No. 95–595, 95th Cong., 1st Sess. 340–41 (1977), *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS 5963, 6296):

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay benefits the debtor, not creditors. It necessarily delays collection actions such as foreclosures. And debtors often file bankruptcy at the last minute, such as Mr. Youse did in this instance. Absent circumstances not present here, *see* 11 U.S.C. § 362(c)(4)(A)(i), the stay arises immediately upon the bankruptcy filing by operation of law. 11 U.S.C. § 362(a); *Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698 (B.A.P. 9th Cir. 2013) ("A broad stay automatically arises upon the filing of a bankruptcy petition.").

The Bankruptcy Code also provides relief to creditors, such as the Clifts, who are impacted by the automatic stay. Section 362(d) provides detailed and specific relief for secured

creditors seeking to exercise their rights in collateral. Bankruptcy courts are constantly asked to balance the debtor's right to reorganize with a secured creditor's right to foreclose.

Here, Mr. Youse filed his bankruptcy without the benefit of counsel. Unfortunately, but unsurprisingly, that has complicated his bankruptcy. He filed the bankruptcy to attempt to reorganize his finances and avoid the loss of the Property to foreclosure. That effort has not gone well, in no small part because the court has granted the Clifts relief from the automatic stay. Based on the development of the record and argument to date, however, the court sees nothing egregious about this situation. Bankruptcy, by its very nature, often involves desperate debtors attempting to address dire financial situations. Again, the very nature of bankruptcy serves to delay the payment of creditors, including those secured creditors seeking foreclosure.

The Clifts are represented by counsel. Yet, throughout the relief from stay process they have evidenced a lack of seriousness that is concerning. Counsel for the Clifts has stated that she is not an experienced bankruptcy attorney. That is not uncommon in this district at the moment. This is largely the reason why the court did not simply deny the Motion as originally filed but rather required supplemental briefing. The court's enforcement of the standards for relief from an order under Rule 60(b), and for annulment of the stay under § 362(d) is not intended to dissuade newcomers from practicing bankruptcy. The court, however, must enforce the rules and statutes, and relief may be granted only when the record demonstrates that such relief is appropriate, even when unopposed. *See generally, Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986) (denying unopposed motion for default judgment).

Moreover, relief from stay, including annulment of the stay, is not arcane bankruptcy magic. Indeed, on reconsideration counsel was quickly able to find the leading case governing annulment of the stay and listed the twelve factors to be applied. Still, a sincere attempt to

examine the relief sought has been lacking. As noted above, the record demonstrates that the Clifts have failed to:

(1) Conduct any legal research as to annulment of the stay under § 362(d);

(2) Comply with the Local Bankruptcy Rules to provide the documents evidencing the underlying debt and security interest.[1] This is particularly troubling as the Clifts have referenced a promissory note as the basis for Mr. Youse's personal liability (invoking the stay), but there is no promissory note. The Clifts subsequently directed the court to a Purchase and Redemption Agreement under which Tundra Herb Company, LLC is liable for the outstanding balance of the Clifts' membership interests in another entity. There is a **serious** question as to whether Mr. Youse is even personally liable (and subject to the automatic stay) based on the documents provided. Yet, neither the *pro se* debtor, nor counsel for the secured creditor have raised this fundamental question;[2]

(3) Specifically request annulment of the stay in their Motion;

(4) Identify the standards for annulling the stay or discuss application of those standards. In short, they failed to give notice that they were actually seeking annulment of the stay except for using the phrase *nunc pro tunc* in the conclusion of their Motion;

(5) Identify the standards for relief from the court's order under Rule 60(b), or to specifically identify and discuss the specific subsection of Rule 60(b) applicable to their Reconsideration Motion, including the general rule "that attorney inexperience,

---

[1] The court accepts that the Motion inadvertently omitted the recorded deed of trust, but it originally failed to include evidence of the underlying debt as required by AK LBR 4001-1(a)(1)[3]. Given the discussion above this is a significant problem.

[2] The Purchase and Redemption Agreement is between Daniel and Robert Clift together with Christopher N. Hayes as sellers, and Tundra Herb Company, LLC (Tundra Herb) as buyer. Tundra Herb is owned by Mr. Youse together with Tyler Russell. ECF No. 34-2 at 1. The sellers sought to sell their 100% membership interests in 5031 Eagle Street LLC (ESP). Though the Clifts and Hayes are identified as the sellers, the Purchase and Redemption Agreement also states that ESP will sell its "right, title, and interest in and to the ESP Membership Interest" for $1,000,000. The Purchase and Redemption Agreement further details the terms and conditions pursuant to which Tundra Herb, as the buyer, shall pay the purchase price. *Id.* at 4. It also included a subsection entitled "Collateral & Guarantees" that required the members of Tundra Herb to "collateralize the balance of the purchase price funds." *Id.* at 4-5. Subsection 2.5.5 further detailed the collateral to be encumbered to secure Tundra Herb's debt. Nothing is this section, however, suggests that Mr. Youse is individually liable for the balance of the purchase price as either the buyer or a guarantor. Mr. Youse did sign the Purchase and Redemption Agreement "as a member of THC and personally." *Id.* at 14. But the Purchase and Redemption Agreement does not appear to place any liability on Mr. Youse individually.

poor litigation decisions, mistakes of law, or alleged malpractice are not encompassed under *Pioneer's* excusable neglect analysis." *Guzman*, 2010 WL 6259994 at *8.

The Clifts' failures are not excusable neglect. True, the Clifts did nothing wrong in conducting the foreclosure sale not knowing that Mr. Youse had filed bankruptcy shortly beforehand, but that only goes so far. The prejudice they allege is simply delay. That delay could have largely been mitigated by now if they had restarted the foreclosure process when the court granted them relief from the automatic stay, or even earlier if they had properly supported the Motion according to the Local Bankruptcy Rules. Moreover, the court does not accept that reliance on statements from others on a matter of law is excusable neglect. Nor does it explain why the matter of law was not specifically raised and discussed.

On the other hand, Mr. Youse failed initially to oppose the Motion, and after the court gave him additional opportunities he filed a short opposition two days prior to the hearing on the Motion. Mr. Youse renewed the argument made in state court, that the Clifts had agreed to release the Property from the Deed of Trust. ECF No. 51. Mr. Youse has opposed reconsideration because (1) the court allegedly held that the detriment he would suffer from retroactive relief would be greater than the detriment the Clifts would suffer without it, and (2) he intended to appeal the state court's decision regarding the Deed of Trust, or start another action to challenge the Clifts' secured interest in the Property. ECF No. 70. Mr. Youse further denied that the Property was at risk of damage. *Id*.

Mr. Youse has, somewhat understandably, also failed to address the standards for relief under Rule 60(b). He has not directly addressed the *Fjelstad* factors discussed in the Clifts' Reconsideration Motion. This leaves the court in a difficult spot. The Clifts have not proven excusable neglect, much less discussed any other basis for relief under Rule 60(b), but Mr. Youse has not addressed why the court should not consider annulment of the stay. Moreover, the record

before the court strongly suggests that court should grant annulment. To be fair, Mr. Youse has attempted to comply with the requirements imposed on a chapter 13 debtor. He has filed schedules showing that he and his wife have roughly $2,024 in monthly net income. ECF No. 31 at 20-24. His income is derived from marijuana sales, which raises significant questions regarding his eligibility to reorganize. *See Burton v. Maney (In re Burton)*, 2020 WL 208803, at *6 (B.A.P. 9th Cir. Jan. 14, 2020). Nonetheless, he has proposed a plan to pay $3,000 per month for 180 months. ECF No. 48 at 1. Setting aside numerous problems with the proposed plan, it is limited to a duration of 60 months. Assuming that Mr. Youse *is* personally liable for the unpaid balance owed to the Clifts, he cannot pay the Clifts in full over the allowed duration of his plan.[3]

Even without examining the accuracy of the debtors' net income, Mr. Youse appears to have filed the instant case to avoid the state court's rulings. While the adverse rulings did not preclude a valid bankruptcy reorganization, the debtor's lack of income to pay the secured debt calls into doubt the good faith of the bankruptcy filing. The failure to promptly advise the Clifts and the trustee conducting the foreclosure of the bankruptcy filing raises additional doubts as to Mr. Youse's good faith. Moreover, the chapter 13 trustee has since moved to dismiss the bankruptcy noting several problems, including her belief that based on the schedules and filed claims the debts well exceed the $2.75 million maximum for debtors in chapter 13. 11 U.S.C. § 109(e).

The court struggled with the Reconsideration Motion. Ordinarily, it would deny a request for relief under Rule 60(b)(1) based on excusable neglect on this record. More is required to raise a request for annulment of the stay than what was presented here. Still, the Clifts have now raised

---

[3] Indeed, the debtor would not have enough to pay his creditors, including the Clifts, in full over the 180 months given other debts and the trustee's commission.

the issue, and Mr. Youse has not addressed the basis for annulment. By his own action, he caused this situation. Had he simply given notice of the bankruptcy, there would have been no foreclosure sale. Moreover, the record strongly suggests that the debtor is not seriously attempting to reorganize his debts but to simply continue his state court challenge of the deed of trust. In this regard, the debtor's case has the hallmarks of a two-party dispute, though there appear to be numerous other creditors. The point remains that Mr. Youse has not attempted in earnest to propose a plan to address the Clifts' debts. Indeed, shortly after opposing reconsideration, Mr. Youse converted his case to chapter 7.

The interests of justice in this case require the court to examine whether annulment of the stay is appropriate. Taking into consideration the totality of the circumstances as required by *Fjelstad,* it clearly is.[4] The Clifts were the innocent parties in this instance, Mr. Youse having failed to give prompt notice of his bankruptcy filing and having permitted the sale to proceed in violation of the automatic stay. Though Mr. Youse has no history of bankruptcy filings, the overall circumstances of his bankruptcy filing after the denial of his efforts to enjoin the foreclosure in state court, together with his lack of the necessary net income to service the

---

[4] The twelve factors for granting retroactive stay relief under *Fjeldsted* are: "1. Number of filings; 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; 4. The Debtor's overall good faith (totality of circumstances test)…; 5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem; 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; 7. The relative ease of restoring parties to the status quo ante; 8. The costs of annulment to debtors and creditors; 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; 10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; 11. Whether annulment of the stay will cause irreparable injury to the debtor; [and] 12. Whether stay relief will promote judicial economy or other efficiencies." *Fjeldsted*, 293 B.R. at 25 [internal citation omitted].

required debts,[5] as well as his apparent ineligibility for chapter 13, all weigh heavily against the bona fides of the bankruptcy filing, even granting Mr. Youse deference for proceeding without counsel. Whether characterized as a lack of good faith[6] or inability to reorganize, these factors favor annulling the stay. Finally, it bears mention that though the parties appear to accept that Mr. Youse is personally liable for the balance owed to the Clifts, the underlying documents – specifically the Purchase and Redemption Agreement – suggest that he is not personally liable. This further calls into question the legitimate application of the automatic stay, and militates in favor of annulling the stay.

## Conclusion

Annulment of the automatic stay is not routinely granted in bankruptcy. The Clifts failed to originally identify that they were seeking that relief, discuss the applicable standards, and develop the facts supporting annulment. That said, the record before the court reflects that the debtor did not legitimately seek to reorganize to address the Clifts' debt (to the extent that he is personally liable), or any other debts. Rather, he filed bankruptcy to continue his state law challenges to the deed of trust. The questions of ineligibility and lack of the necessary net income weigh considerably in favor of annulment.

---

[5] Mr. Youse's prepetition transfer of the Property to a nondebtor rendered any personal obligation Mr. Youse had to the Clifts unsecured, creating further issues within any reorganization. To the extent that Mr. Youse could forestall the foreclosure of the Property, he was obligated to pay the Clifts and any other members of that unsecured class in full over a five-year plan.

[6] The Clifts also included in evidence a Quitclaim Deed, prepared by the North Star Law Group, LLC, transferring the Property to Tundra Estates, LLC on January 26, 2023. ECF No. 34-1 at 82-820. This strongly suggests that Mr. Youse did not own the Property. Yet, Mr. Youse listed the Property as his in his Schedule A/B. ECF No. 31 at 1. Mr. Youse stated as to the Property that ownership was "uncertain." *Id*. This statement, and any uncertainty, was at his doing and further supports a finding of an overall lack of good faith.

Though the court ordinarily would not find excusable neglect in these circumstances, the record demonstrates that it is in the interests of justice to do so. After significant consideration, the court exercises its discretion to grant the Clifts' request to reconsider its order on relief from the automatic stay for excusable neglect, and to annul the stay retroactively. Counsel should not rely on the court's exercise of discretion to reach the same result in any future similar situations.

The court shall enter a separate order consistent with this decision.

DATED: February 13, 2024.

                                          /s/ Gary Spraker
                                          GARY SPRAKER
                                          United States Bankruptcy Judge

Serve: Debtor
        E. Gardner, Esq.
        N. Jipping, Trustee
        U.S. Trustee
        ECF Participants via NEF